## INTERNATIONAL AND GREAT NORTHERN RAILWAY CO.
### AND MISSOURI PACIFIC RAILWAY CO
### v.
### JOHN J. GRAY AND WIFE.

#### (Case No. 1857.)

1. RAILROADS — NEGLIGENCE — SPEED — SIGNALS — CONTRIBUTORY NEGLIGENCE — Plaintiffs were on a hand-car, by permission of the railway company, and the car was making a trip by order of the company. The train which caused the injury was behind time; had just passed a road crossing without sounding the whistle, and was approaching, at the rate of twenty miles an hour, a bridge, where the rules required it to moderate its speed to four miles an hour; it ran into a deep cut, where the track made a sharp curve, and collided with the hand-car, at a point where it had never before run at a rate of over eight miles an hour. *Held:*

(1) That the hand-car was rightfully on the track, plaintiffs were lawfully on board of it, and the employes on the train were chargeable with notice that it was likely to be there.

(2) The failure to give the signals at the crossing, and the excessive rate of speed at the time and place of the accident were acts of negligence on the part of the road.

(3) In the absence of evidence showing that it was the imperative duty of persons in charge of a hand-car of this character, under these circumstances, to send out flagmen, it was for the jury to judge of the meaning and effect of the general regulation requiring hand-cars to send out flagmen, taken in connection with the manner in which it was enforced, as shown by the testimony of witnesses competent to speak upon the subject.

(4) A regulation requiring hand-cars to send out flagmen, when they were in a dangerous position, would not make a failure to send out the flagmen negligence, if the danger was caused by the failure of the approaching train to slacken its speed and give the signals.

(5) Whilst the statutory signals to be given at road crossings are intended as a warning to those crossing the track, and the failure to give them, as to such persons, is negligence *per se*, the failure may be considered in proving negligence on the part of the company as to other parties lawfully on the railway. (W. & A. R'y Co. *v.* Juns, 8 Am. and Eng. R'y Cases, 267.)

(6) Though a railway company has a right to run its trains at any speed it may choose, when not prohibited so to do, yet if the rules of the company require trains to be run slowly on certain parts of the track and those rules have usually been complied with, the public have a right to conclude that they will be observed on any given occasion, and to act accordingly.

(7) The employes operating a train are chargeable with notice that reliance will be placed upon their obeying the statute laws and rules of the company, and the latter is liable for any failure to do so, from which injury to person or property results.

(8) It is not negligence not to anticipate that another will violate the law in a given particular, and in not providing against such violation. (2 Thom. on Neg., 1472, sec. 18.)

(9) The facts were sufficient to sustain a verdict for plaintiffs.

APPEAL from Cherokee. Tried below before the Hon. James I. Perkins.

This action was brought in the District Court of Cherokee county by John J. Gray and his wife, Mary A. Gray, for themselves, against the International and Great Northern Railroad company and the Missouri Pacific Railway company, to recover actual damages for an injury inflicted upon Mrs. Mary A. Gray, one of the plaintiffs, and for compensation for the death of a child of the plaintiffs, and the loss of service of another child, caused by the negligence of the servants of appellants.

The defendants below plead in defence in substance, viz.:

1. A general denial and plea of not guilty.

2. That plaintiffs proximately contributed by their own negligence to the injury complained of.

3. That after the servants discovered plaintiffs' danger they did everything possible to avoid it.

The case was tried on the 24th of December, 1884, and resulted in a verdict and judgment for plaintiffs for $2000.

*Jno. Young Gooch*, for appellants, cited: H. & T. C. R'y Co. *v.* Richards, 59 Tex., 373; Williams *v.* T. & P. R'y Co., 60 Tex., 205; Pierce on Rail., 338.

*Templeton & Collier*, for appellees, cited: 2 Thompson on Neg., p. 1232, sec. 5, & pp. 1172-3, secs. 18, 19, and authorities cited; Prince *v.* I. & G. N. R'y Co., Austin Term, 1885; Tex. Ct. Rep. for May, 1885; T. & P. R'y Co. *v.* Graves, same; T. & P. R'y Co. *v.* Murphy, 46 Tex., 357; G., H. & S. A. R'y Co. *v.* Smith, 59 Tex., 406; Thompson on Neg., vol. 2, pp. 1105, 1108; City of Galveston *v.* Posnainsky, 62 Tex., 134; T. & P. R'y *v.* Chapman, 57 Tex., 75; H. & T. C. R'y Co. *v.* Wilson, 60 Tex., 142.

WILLIE, CHIEF JUSTICE.—This case comes before us upon one assignment of error only of which we can take notice, viz: "The verdict of the jury is manifestly contrary to the law and evidence, "for the uncontradicted evidence shows that the plaintiffs, by their "negligence, contributed proximately to the injury complained of."

It seems to be conceded that there was negligence in operating the train that collided with the hand-car, and the case is rested by the appellants upon the contributory negligence of the parties injured by the collision. The question as to negligence in the operation of the train by the company's employes, and that as to the contributory negligence of the plaintiffs, may be considered together, as they must both depend for solution upon the relative duties due from the parties to each other.

The plaintiffs were lawfully upon the hand-car at the time of the collision. Whether they were entitled to be considered passengers, with all the rights which that position implies, it is not necessary for us to consider; they were on the car by permission of the company, as is fully shown by the evidence. The car itself was in the regular performance of its duty, and was required to make this very trip by the order of the company. It was, therefore, rightfully on the track at the place and time of the collision, and the plaintiffs were lawfully on board of it. The fact that the train was behind time did not require that the hand-car should keep off the track, but it was obliged to be there in the performance of its duty to the company, no matter whether an expected train of the company was behind time or not.

The train was behind time, as had generally been its habit. It had passed a road crossing, before reaching which it was required by law to sound a whistle, which requirement seems to have been complied with by all trains upon all former occasions; it was nearing a bridge and trestle work, and the rules of the company required it to moderate its speed to four miles an hour, and it had passed a sign-board, giving it directions to that effect; it had never gone at a speed of more than six or eight miles an hour at the place where the accident happened, yet on this occasion it was running at the rate of twenty miles an hour. Without giving any signal or checking its speed, it crossed the road, ran into a deep cut, where the track made a sharp curve, and there collided with the car, which was but a short distance from the crossing, and produced the injuries of which the plaintiffs complain.

The acts of negligence on the part of the train were, the failure to give the statutory signals at the crossing, and its excessive rate of speed at the time and place of the accident.

The only act of negligence, if any, that can be alleged against the persons in charge of the hand-car, was the omission to send out flagmen whilst in the cut, so as to warn the train of its presence.

The evidence does not show that it was the imperative duty of the persons in charge of a hand-car such as the one upon which the plaintiffs were riding, to send out flagmen before and behind in situations like the one in which this car was placed when the collision occurred. The regulations of the company required that hand-cars and track-cars should be protected by flagmen when by reason of fog, sharp curves, or the like, risk was involved; and added that this was particularly necessary in case of loaded track-cars. It was, however, proved that in practice flagmen were sent out only in cases when a loaded track or hand-car was being propelled upon the railroad. The

reason given for this was that track-cars, or loaded hand-cars, could not be easily taken off the track, and this made it necessary to send out flagmen. It was, therefore, questionable whether the regulation applied to an unloaded car, and as the court could not say as matter of law that it did, the jury were to judge of the meaning and effect of the regulation, taken in connection with the manner in which it was enforced, as shown by the testimony of witnesses competent to speak upon the subject. The regulation, too, upon its face did not seem to require that in sharp curves flagmen should be out before and behind at all times, but only when the presence of the car in the curve placed it in a dangerous position. The hand-car would have been in no danger from the front if the train, instead of being behind time, had already passed, and it would not have been negligence not to have sent out a flagman to the front. It would have been in no danger, from the evidence, from the overdue train, had the signals been given at the road crossing and the speed of the train slackened as required by the company's regulations. Hence, without a neglect of duty by the trainmen, the position of the car in the cut was not one involving risk. Upon the performance of their duty by the employes on the train, the car hands relied; and the question is: Were the facts sufficient to authorize the jury to find that the plaintiffs were not, under the circumstances, guilty of such negligence as contributed proximately to the injury of which they complained ?

Whilst the statutory signals to be given at road crossings are intended as warnings to persons upon the road or near the crossing, the failure to give them may be taken into consideration, together with other facts, to show want of reasonable care on the part of the company as to other parties lawfully upon the railway. W. & A. R'y Co. v. Juns, 8 Am. & Eng. R'y Cases, 267.

In the one case the omission of the signals is negligence *per se,* and may be so declared by the court; in the other it may or may not be negligence under the circumstances, and the jury must pass upon the question.

In the case above cited the law required that the whistle should be blown, and the speed of the train checked, upon approaching a public crossing. It was held that whilst these provisions were intended to protect life and property at such crossings, yet when an accident occurred just beyond a crossing, the fact that these requirements were disregarded might be considered by the jury in determining the question of negligence on the part of the railroad company.

And so as to an excessive rate of speed. Whilst a railroad company has the right to run its trains at any speed it may choose, when

not prohibited so to do, yet circumstances may impose such restrictions upon the right, or to authorize a finding that excessive speed at a certain time or place will be negligence on the part of the company. Thomas v. R'y Co., 8 Tex., 729. Here not only circumstances, but positive regulations required the train to go slow at or near the point of collision.

Whilst statutory law imposes certain duties upon these corporations for the protection of life and property at points of the greatest danger, they owe duties to the general public which require that they exercise proper care to avoid injury to any of its individual members. The omission to perform these duties may be the highest degree of negligence, and the facts as to their omission, and as to whether this constitutes negligence under the particular circumstances, should be left to the jury.

When the company have invariably obeyed the law in reference to the signals to be given at a particular crossing, and have, at the same time, rules which require its trains to run slowly on that part of its track (which rules have usually been complied with), the public may have a right to conclude that the law and rules will be observed on any given occasion, and to act accordingly in their lawful use of the railway track. Not only so, but the employes operating a train, being chargeable with notice that reliance will be placed upon their obeying the statute law and the rules of the company, the latter should be held liable for any failure to do so from which damages have resulted to person or property.

It has been held that when a train has been uniformly run and operated in a certain manner, it is evidence of negligence not to run it in the same way at any particular time; and that one who had the right to act upon the belief that it would be so run and operated, and who was injured because it was not, could recover. Shultz v. C. & N. W. R'y Co., 44 Wis., 638. The usual manner of operating the train, neglected on that particular occasion, was to ring the bell before starting, and to run the train at a reasonable rate of speed.

It is not contributory negligence not to anticipate that another will violate the law in a given particular, and in not providing against such possible violations of it. 2 Thompson on Neg., p. 1472, sec. 18.

Though the rules of the company may have required that the hand-car keep out of the way of trains, and send out flagmen when by reason of short curves risk was involved, it certainly was not contemplated that they should anticipate danger when it could not possibly arise except by reason of a violation of rules on the part of the trainmen, and, through them, of the company itself.

The hand-car was upon the track at a time when, in the proper discharge of its duties, it was likely to be there. With the knowledge of this fact the employes of the train were chargeable.

They had no right to trust to the supposition that, if in the cut, the hand-car men, though lulled into security by the omission of signals required of the train, would regard the situation as dangerous, and send out flagmen for their protection. They at least had no right to run the train at such an unusual rate of speed, in violation of the rules of the company, when they must have known that on this account, if the hand-car was in the cut, a collision might and probably would ensue, though the hand-car men should faithfully obey the rules prescribed for their government.

We think the jury were properly allowed by the court to pass upon all the facts as to the conduct of the employes in charge of the train and those on the hand-car, the situation and circumstances attending the collision, and the facts by which it was brought about; and finding as they did, that the injury was not caused proximately by the negligence of the plaintiffs, we are not prepared to say that their verdict is against the evidence.

The charge of the court, copied in appellant's brief, did not instruct them that the facts stated in the charge would constitute negligence on the part of the plaintiffs, but left the question as to whether they would or not, to be determined by the jury. This was proper, and we see no error, either as against law or evidence, that the jury or court have committed, and the judgment is affirmed.

AFFIRMED.

[Opinion delivered December 15, 1885.]