Galveston, Harrisburg & San Antonio Railway
Company v. August Garteiser.

No. 453.

1.  **Lease of Railroad—Liability of Lessor—Personal Injuries.**—In the absence of a statute permitting it, a railroad company can not by a lease evade any responsibility it may owe to the general public, or escape liability for damages caused by the lessee in the operation of the road.

2.  **Master and Servant—Independent Contractor—Licensee.**—Where plaintiff was working for an independent contractor who was building a fence for the railroad company, the relation of master and servant did not exist between plaintiff and the company; and the plaintiff, being rightfully on a hand-car on the track, occupied the same relation to the railroad company that any person would who was licensed or permitted to be on the track, and was subject to the same rules of contributory negligence.

3.  **Railway Company—Statutory Signals at Crossings—Negligence.**—The failure to give the statutory signals at road crossings may be taken into consideration, together with other facts, to show want of reasonable care on the part of the company as to any parties lawfully on the right of way.

4.  **Same—Liability of Lessor—Rules Made by Lessee.**—Evidence of the nonobservance of rules for the guidance of its locomotive engineers made by the lessee company is admissible in an action for negligence against the lessor.

5.  **Same—Signals at Road Crossings.**—Evidence is admissible to show that trains passing near the place of collision where plaintiff was working had given the statutory signals, and that plaintiff had heard them, as showing that plaintiff had a right to conclude that the company would continue to do so.

6.  **Opinion of Witness—Evidence.**—Where it is a matter of impossibility to so detail the facts as to produce the impression upon the minds of the jury that was legitimately produced on the mind of the witness by the facts, the opinion of a witness is admissible, in connection with the facts.

7.  **Same.**—Where a witness testifies positively that he was near a road-crossing, and that no bell was rung or whistle sounded, such testimony is not an opinion, but is testimony of an absolute fact.

8.  **Evidence Cumulative.**—The admission of improper evidence will not be considered where another witness has been permitted, unchallenged, to swear to the same fact.

9.  **Railroad Company Rules—Customary Violation.**—The customary violation of the rules of a railroad company may be shown to fix or defeat the liability of the company.

10.  **Charge of Court—Negligence.**—Where the different circumstances relied on as evidence of negligence are mentioned in the charge, and the jury are instructed that if they find the circumstances were proved and that it evidences negligence as defined in another part of the charge, they should find for the plaintiff, the charge is not subject to criticism.

11.  **Same—Degree of Care Defined.**—The care required of a person riding on a hand-car, in the rightful prosecution of his work, under an independent contractor, is

such as an ordinarily prudent man would exercise under like circumstances, and there is no rule of law that would require of him the exercise of the highest degree of care that he could under the circumstances.

12.  **Master and Servant—Negligence of Superior Officer.**—The negligence of the "boss" of a gang on a hand-car is not attributable to the inferior working under his control, although the inferior participate in the act, if he does so by the order of such superior.

APPEAL from Bexar.    Tried below before Hon. GEORGE H. NOONAN.

*Upson & Bergstrom,* for appellant.—1.    Where one railroad is leased and operated by another exclusively, the company lessee is alone responsible for injuries committed in the course of operating the road. The defendant having been sought to be made liable for plaintiff's injury, it was a legitimate defense, under the general denial, to show that the railroad on which, and the train of cars by which, plaintiff was injured, were at the time exclusively managed, operated, and controlled by the Southern Pacific Company, a separate and distinct incorporated company from that of defendant, and evidence having been introduced showing or tending to show that fact, a legitimate issue was thereby raised, which should have been presented to the jury by a proper charge.

Where a special instruction is requested upon a material issue, the same should be given to the jury if in proper form; if, however, the same is defective in form, but indicates to the court a material issue which should be submitted to the jury, a refusal so to do is reversible error.    Sayles' Civ. Stats., art. 1317, notes 2, 3, and 4; Thomp. on Trials, 1027, 2314; Tel. Co. v. Andrews, 78 Texas, 305; Kirby v. Estill, 75 Texas, 484; Railway v. Underwood, 64 Texas, 468; Railway v. Teirney, 72 Texas, 312; Railway v. Culberson, 72 Texas, 375; Railway v. Watts, 63 Texas, 553; Baxter v. Railway, 22 S. W. Rep., 1002; Hedgpeth v. Robertson, 18 Texas, 871.

2.    To permit a witness to state, that while on and aiding in the running of a hand-car, he could, or thinks he could, have heard an engine whistle if blown at a distance from him of a mile or more, or a half or three-quarters of a mile, would be allowing a very doubtful and unreasonable opinion or conclusion to go to the jury as a fact known and sworn to by the witness, thereby taking from the jury their legitimate province of forming their own conclusions from the facts in evidence.    Marcott v. Railway, 8 Am. and Eng. Ry. Cases, 308; Eskridge v. Railway, 12 S. W. Rep., 580; Bridge Co. v. Cartrett, 75 Texas, 631; Shelley v. City of Austin, 74 Texas, 613; Railway v. Hepner, 83, Texas, 631; Schmick v. Noel, 72 Texas, 4; Railway v. Larkin, 80 Texas, 457; Railway v. Sciacca, 80 Texas, 354; Moore v. Kennedy, 81 Texas, 147; Clarke v. Callicoate, 24 Texas, 172; Railway v. Smith, 52 Texas, 186; Williams & Guyon v. Davis, 56 Texas, 254; Biering v. Wagner Bros., 76 Texas, 508.

3. The court erred in refusing to give to the jury the special charge requested by the defendant, which is as follows: "When a person is upon a railroad track by permission of the railroad company, but is not connected with the operation or business of the railroad company as an employe or otherwise, the company owes him no special duty, because he has been permitted to be there, beyond that which it owes the public generally, and such person has no reason to expect that the railroad company will regulate or give him notice of the time of the running of its trains to suit his purpose or convenience, or to give him warning, and such person can only expect from the company such consideration and care as it owes to the general public." Wood's Ry. Laws, 1270, 1272, and note 1; Railway v. Grimes, 13 Ill., 388; Railway v. Godfrey, 71 Ill., 507; Sweeney v. Railway, 10 Allen (Mass.), 372; 16 Am. and Eng. Encyc. of Law, 411, subdiv. 7; Railway v. Griffen, 50 Am. Rep., 784; Zoebisch v. Tarbell, 87 Am. Dec., note 11, p. 667.

4. Appellee having voluntarily entered into the service and placed himself under the control of Heineman as to the work he was performing, and in the running of the hand-car, the relation of master and servant was thereby created between them, and thereby appellee made Heineman his agent in the direction and movement of the hand-car which proximately caused his injury, and any negligence of Heineman in that respect was the negligence of appellee. Railway v. Miller, 25 Mich., 274; Shearm. & Redf. on Neg., 3 ed., 40; Johnson v. Railway, 2 Texas Civ. App., 143; Railway v. Greenlee, 62 Texas, 351; Brickell v. Railway, 24 N. E. Rep. (N. Y.), 449; Railway v. Kutac, 72 Texas, 653.

*W. W. Boone* and *Thomas H. Franklin*, for appellee.—1. If it be conceded that the undisputed evidence in the case shows that the train which collided with the hand-car upon which appellee was traveling when hurt was operated and controlled by the Southern Pacific Railway Company, still the Galveston, Harrisburg & San Antonio Railway Company, over whose road said train was being operated, would be responsible in damages for injuries done by the former company in the operation of such train.

Railroads owe a duty to the public and to persons who may be rightfully on their tracks to so operate their cars over said track as not to negligently do injury to any one upon the track. They can not relieve themselves of this duty by permitting other railroads to operate their cars for them, or utilize their tracks for the operation of cars thereon. When they permit their tracks to be so used, they make the operating company their agent, and become responsible for the negligent acts of such company, when same result in injury to others. Railway v. Culberson, 72 Texas, 375.

2. Where the conclusions of the witness from facts known are so closely connected with such facts and so much a part of same that the bare statement of the facts can not photograph the occurrence to the

jury so that it could draw an intelligent conclusion therefrom, the opinion of the witness is admissible in evidence, as it of necessity becomes a part of the occurrence he is relating, and in such instance it is not necessary that the witness should be an expert. Whether a given sound can be heard a given distance is not a matter of opinion, but of fact. The length of the distance could be given, but it is impossible for a witness to explain the volume of sound without expressing his judgment thereon. Railway v. Richards, 83 Texas, 205; Railway v. Hepner, 83 Texas, 150; Bridge Co. v. Cartrett, 75 Texas, 632.

3. When a public carrier has passengers in its charge, there is a peculiar duty upon it to exercise a very high degree of care to protect such passengers. It is then guarding the lives of others. But the passenger would not be held guilty of contributory negligence for a failure to exercise for his own protection the same high degree of care that the carrier is required to use for the passenger's protection. Where there is no peculiar relationship existing between parties, the care to be exercised by them is only such as an ordinarily prudent person would exercise under the circumstances. Railway v. Boozer, 70 Texas, 536; Garteiser v. Railway, 2 Texas Civ. App., 235.

FLY, ASSOCIATE JUSTICE.—This is a suit for personal injuries alleged to have been inflicted upon appellee by the railroad company, while the former was riding upon a hand-car in the course of his employment on the road. The judgment was for $7500. This is the second appeal, the decision on the former being reported in 2 Texas Civil Appeals, 234.

Appellant pleaded general denial, and contributory negligence on the part of appellee.

We find that the record will justify the following conclusion of facts: Appellee on the 25th day of March, 1887, was in the employ of one Heineman, who was an independent contractor to build fence for appellant along its line of railroad. That on the morning of March 25, 1887, appellee, in company with his employer and other employes, was on board a hand-car on appellant's railroad, proceeding to the place where work on the fence was being prosecuted. The hand-car on which Heineman and his employes were riding was furnished by appellant to him in 1884, and he had authority to use the track with the hand-car in going from point to point in the prosecution of his work. When the hand-car was on a bridge across Geronimo Creek a train came suddenly upon them, and in order to save their lives Heineman and his employes left the hand-car, and in leaving the hand-car appellee fell from the bridge and received serious and permanent injuries, resulting in paralysis of the legs, damage to the spine, and total incapacity for labor. Appellee was earning $1.50 per day when injured, was 27 years old, and was strong and vigorous. No signals were given at the road crossing, a few hundred yards east of the bridge. When the train was first seen it was so close to the hand-car that appellee was com-

pelled to leave it in order to save his life.    Appellee had no notice of
the approach of the train until he saw it.    The train was not a regular
one, but was an extra.

It is urged, that the court erred in refusing to submit the question of
a lease of its road by appellant to the Southern Pacific Company.    This
position is, however, not well taken.    The lease of the road would in
no manner affect the liability of its owner for any damages that might
accrue to the public, whether committed through the negligence of the
lessor or lessee.    There being no statute in this State permitting it, a
railroad can not by a lease evade any responsibility it may owe to the
general public.    Railway v. Morris, 68 Texas, 59; Railway v. Keuhn,
70 Texas, 582; Railway v. Eckford, 71 Texas, 274; Railway v. Lee, 71
Texas, 538.

Appellee was not in the employ of either appellant or the Southern
Pacific Company, but was working for one Heineman, an independent
contractor, who was building a fence for appellant for a certain sum
for each mile constructed.    The relation of master and servant did not
exist between appellee and appellant, and its duty to him was the same
as though he was a member of the general public, and in nowise con-
nected with it by employment.    Rorer on Rys., p. 1205; Prince v. Rail-
way, 64 Texas, 144; Railway v. Cock, 68 Texas, 713.    Such being the
case, the duty of the railway company was the same as that which it
owed to any one else from the general public who had the right given
him to use the track of the railroad.    Appellee was not a trespasser
upon the track, but under the authority given his employer to use the
track in conveying his employes from one point to another, was right-
fully on the hand-car.    He would therefore occupy the same relation
to the railroad company that any person would who was licensed or
permitted to be on the track, and subject to the same rules as to con-
tributory negligence.    Appellee was in the discharge of his duty to his
master at the time that the injury was inflicted, and was not standing
in the relation of employe to the railroad company, and if not guilty
of contributory negligence, was entitled to recover.    Eason v. Railway,
65 Texas, 578; Receivers v. Eddy, 79 Texas, 540.

The plaintiff was lawfully upon the hand-car at the time of the in-
jury.    The car itself was in the regular performance of its duty, and
was making the trip in furtherance of a contract with the railroad com-
pany.    The train was not a regular one, and without giving any sig-
nal, and at a high rate of speed, it passed the road crossing and collided
with the car.    Those on the hand-car had stopped before going on the
bridge and listened for a train.    None was heard.    "Whilst the statu-
tory signals to be given at road crossings are intended as warnings to
persons upon the road or near the crossing, the failure to give them
may be taken into consideration, together with other facts, to show
want of reasonable care on the part of the company at to other parties
lawfully upon the railway."    Railway v. Gray, 65 Texas, 32.    The
statute requires that proper signals shall be given by a train approach-

ing a public crossing, and while the primary object and design of the statute was to protect persons and property at the crossings, the disregard of the statute may be weighed by the jury as a circumstance to show negligence, when an injury is inflicted by a train in such proximity to a crossing that the giving of the signals could have been heard by a person lawfully on the track. Railway v. Raiford (Ga.), 9 S. E. Rep., 169; Cahill v. Railway (Ky.), 18 S. W. Rep., 2.

By the charge of the court, the liability of appellant is conditioned upon the facts that appellee was on the hand-car on the track with the knowledge and consent of appellant, and used due care and caution in discovering the approaching train and in leaving the hand-car, and that appellant was guilty of negligence in failing to give a signal of the approaching of the train at the road crossing, that such negligence was the direct and proximate cause of appellee's injuries. Every phase of contributory negligence of which appellee might have been guilty was presented in the special charges asked by appellant and given by the court, and the jury was further instructed, that although appellant may have been guilty of negligence in failing to give the signal, yet if appellee was also guilty of negligence he could not recover. In fact, the liability of appellant is placed by the charge exactly as it desired it to be—that is, the same liability that it owed to any other member of the general public who was lawfully on the track. Complaint is made that this liability is not more fully presented by giving certain special charges, wherein it is reiterated that the liability of appellant to appellee was the same that it owed to the public, but the whole charge is based on that theory, and it was unnecessary to repeat it. Objection was made to the introduction of rules for the guidance of locomotive engineers in giving signals before entering covered bridges and during fogs, purporting to have been issued by the Southern Pacific Company. So far as the general public was concerned, the negligence of the lessee was the negligence of the lessor. Their admission was objected to upon the ground alone that they were issued by the Southern Pacific Company, and this objection is not tenable.

It is complained that appellee was permitted to testify, that nearly every train that came by while he was working near the place of collision had given the signals at the road crossing, and that he had heard them. The testimony was admissible. If the company had been in the habit of obeying the law in giving signals, appellee had a right to conclude that it would continue to do so. Railway v. Gray, 65 Texas, 32; Cahill v. Railway, 18 S. W. Rep., 2.

We are of the opinion that it was not error to permit the appellee to testify, that he could have heard the whistle had it been sounded on the morning of the disaster. The object in admitting opinions is to throw light on some obscure point, a knowledge of which is known peculiarly to the witness, and whose effect can not be obtained by the jury in the absence of the opinion of the witness. Garteiser had told, that he had worked for some time near the bridge; that he had seen

many trains pass, and heard the whistle many times as it sounded near the road crossing as distinctly as though he had been close to it; that he was hurt on a foggy morning, and that sound could be heard better on a foggy morning than on a clear, dry one; and that he did not hear the bell or whistle on the morning of the accident. After these facts had been stated to the jury, appellee stated, that he could have heard the whistle had it been sounded or the bell had it been rung. As a general rule, the opinions of witnesses are inadmissible in evidence. Facts should be stated, and not inferences, opinions, or conclusions deducible from the facts. There are, however, exceptions to this general rule. Cases arise where it is a matter of impossibility to so detail the facts as to produce the impression on the minds of the jury that it was legitimately produced on the mind of the witness by the facts, so the admission of opinions of witnesses, whether experts or those who show an acquaintance with the subject by a detail of facts on which their opinions are based, are justified as evidence by the law of necessity.

Garteiser had shown himself familiar with the locality, and was in a position to give an opinion as to whether the whistle or bell could be heard, as he had heard it many times at the same distance, under more unfavorable circumstances. In a similar case, the Supreme Court of Kansas held that a witness could testify that he would have heard a whistle had it been sounded. Railway v. Miller, 39 Kas., 419. In the case of Railway v. Duelm, 23 Southwestern Reporter, 596, this court held, that the opinions of witnesses, that they would have heard the whistle had it been sounded, was proper testimony.

The witness Schrader swore positively that he was near the road crossing, and that no bell was rung or whistle sounded. This is objected to as an opinion, but it was not an opinion, but testimony to an absolute fact.

Witness Koch was asked by appellant the following cross-interrogatory: "In order to recover against the railway company in a case like this, have you understood or been told that it was necessary to prove that no whistle was blown or bell rung, or that the party injured or some one with him must have stopped and looked for an approaching train of cars and listened, and did not hear any train, whistle, or bell ring?" To this cross-interrogatory the witness answered, "I never was posted to swear in favor of A. Garteiser, so that he might recover damages." The answer was objected to by appellant, as not responsive to the question. The answer was not as direct as it might have been, but had it remained in evidence could not have been of injury to appellant. It was at once withdrawn from the consideration of the jury, and we are of the opinion that there is no merit in the contention that admission of the answer was reversible error. It is contended by appellant that appellee should not have been permitted to testify, that no notice was given to the men on the hand-car of the fact that a special would pass on the morning of the accident. Appellant

introduced this issue through the depositions of its witness Heineman, who swore that the track walker told him, in the presence of appellee, that he thought he heard an approaching train, and appellee should have been permitted to swear that he did not hear such notice given. Again, if the evidence had been improper, appellant permitted another witness, unchallenged, to swear to the same fact.

Stephens, a witness for appellant, testified about a rule of the company, and was asked by appellee if he could get a copy of the rules by the next morning, to which he testified, in substance, that he could not do it, and did not think it was his business. The questions and answers were objected to as improper, irrelevant, and immaterial, and because it was not shown that the rules were in possession of the witness, and no notice had been served on appellant to produce the rules, and the evidence was calculated to prejudice the cause of appellant. The witness had testified that the rules were only given to employes, and that he was an employe, and there was no impropriety in asking him if he could or would get a copy of the rules. The rules were afterwards introduced in evidence. It was shown by appellant that instructions had been given to Heineman, who was in charge of the gang on the hand-car, to always send out flagmen when crossing bridges on foggy mornings, and George Lagenfeldt, one of the men on the hand-car, was allowed to testify that he never complied with this rule, and appellant objected to it, because it was not shown that the violation of the rules was known to appellant. The customary violation of rules may be shown to fix or defeat the liability of the company. Wood's Mast. and Serv., sec. 401. The evidence does not show that instructions given to Heineman were ever made known to appellee. The second clause of the charge is not subject to the criticism made by appellant. The different circumstances relied on as evidencing negligence are mentioned in the clause referred to, and the jury are instructed that if they find the circumstances were proved, and that they evidence negligence, then they should find for appellee. The testimony for appellee showed that the train was running at a high rate of speed, that it was a foggy morning, and that there was a failure to blow the whistle or ring the bell at the road crossing, and this testimony justified the charge. The care required of appellee, riding in the prosecution of his work on a hand-car, is such as any ordinarily prudent man would exercise under like circumstances. We know of no rule of law that required of appellee the exercise of the highest degree of care that a person under the circumstances could exercise. The degree of care imposed by the charge was all that could be required. The evidence shows that appellee was authorized in prosecuting his employment to go from point to point on a hand-car, which had been placed in charge of his employer for that purpose. It became necessary, to properly perform the labor that he was employed to do, that he should be transported to his work on the car. The rule laid down in Railway v. Lee, 70 Texas, 496, is the one ap-

plied by the court, and was the proper one.     See also Railway v. Smith (Texas Sup.), 28 S. W. Rep., 520.

Heineman, the "boss" of the gang of which appellee was a member, had some eighteen months before the disaster been instructed, in foggy weather or in approaching sharp curves and obscure places on his hand-car, to send out a flagman to avoid collisions, and appellant asked a charge instructing the jury, that if Heineman had disobeyed the directions given him, or had received notice of the approach of the train, and negligently went upon the bridge, that his negligence would be imputed to appellee.     We have seen no authority supporting the instructions requested.     On the other hand it has been held, that "the negligence of a superior is not attributable to an inferior working under his control, although the inferior participate in the act, if he does so by order of such superior; and therefore such negligence can not be charged upon the inferior as contributory negligence so as to defeat him in an action brought for injuries occasioned by such act of negligence."     Hoben v. Railway, 20 Iowa, 562.     In the Iowa case, several employes were operating a hand-car under control of a "boss," and in the course of the employment one of them was injured by reason of the negligence of the boss, and it was held that the negligence of the boss could not be imputed to the employe.     We are of the opinion that this is the correct doctrine.

The charge of the court is full and fair, and, in connection with the special charges given, submits the question of the negligence of appellant and the contributory negligence of appellee to the jury.     The evidence is sufficient to sustain the verdict.     The former opinion of this court is withdrawn, and the judgment is affirmed.

                                                            *Affirmed.*

Delivered January 16, 1895.


                          ON MOTION FOR REHEARING.


FLY, ASSOCIATE JUSTICE.—The whole testimony shows that Garteiser was an employe of Heineman, who was an independent contractor to build fence for the appellant, under a contract made with it before the Southern Pacific Company had come into existence.     It is true that Heineman in one part of his testimony swore, that he was a contractor for the Southern Pacific Company, but at the same time stated, that he had been such contractor since 1884.     The first connection of the Southern Pacific Company with the road was in 1885.     The testimony shows, that the hand-car on which appellee was riding was furnished by appellant.     Appellee had no notice of any kind of the approach of the train.     Schraeder said:     "I saw the train when it crossed the public road going from east to west, in the direction of the bridge.     I saw said train of defendant's cars, as stated; they, that is those in charge of the train, did not ring the bell or blow the whistle just before or while crossing said highway.     *   *   *   No signals were

given." It is insisted that the witness, being near the crossing, might not have heard the signals. To comply with the law, the bell should have been rung continuously until the crossing was passed. Acts 1883, p. 28; Railway v. Duelm, 23 S. W. Rep., 597. Before going on the bridge, the parties on the hand-car stopped and listened carefully to ascertain if any train was approaching, and hearing none, they then went on the bridge. Garteiser, the appellee, had been working in the locality of the accident for about four months. He said: "I know where the railroad crosses a public road, which is about six or seven hundred yards east of the bridge. We built a fence along the right of way from the section house to the bridge; that was about a month before the accident, where I was injured at the bridge. While building fence along there at the point where we stopped, I had heard the whistle of a train at the public crossing east of the bridge. I had heard the whistle from that point a number of times; could hear it distinctly, nearly as if I was right close to it. * * * I am familiar with the surroundings there. * * * I did not hear the sound of the bell or whistle on that morning." This witness swore that the train was running "awful fast." The bridge is about 250 or 300 feet long.

The rules for the trains on the road required that five short blasts of the whistle should be given before entering tunnels and covered bridges, and required special trains to sound the whistle repeatedly in obscure places.

We are sustained in our position that the failure to give the statutory signals at the road crossing was admissible as a circumstance to show negligence, in connection with a person who was close enough to have heard the signals, by the following additional authorities. Davis v. Railway, 34 N. E. Rep., 1070; 159 Mass., 532; Iltis v. Railway (Minn.), 41 N. W. Rep., 1040; Hawley v. Railway (Iowa), 29 N. W. Rep., 787.

The motion is overruled.

*Overruled.*

Delivered February 27, 1895.

Writ of error refused.